IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 1:13-cr-00365-MC |
| | No. 1:17-cv-00474-MC |
| v. | **OPINION & ORDER** |
| BRADLEY WILLIAM MONICAL, | |
| Defendant. | |

McSHANE, District Judge.

This matter comes before the Court on Defendant Bradley William Monical's Amended Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 89. Defendant also moves for appointment of counsel. ECF No. 102. For the reasons set forth below, the Amended Motion under § 2255 is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required. Defendant's motion for appointment of counsel is also DENIED.

## BACKGROUND

On August 1, 2013, Defendant Bradley William Monical was indicted in the District of Oregon for three counts of Armed Bank Robbery (Counts 1, 3, and 5) and two counts of Possessing a Firearm in Furtherance of a Violent Crime (Counts 2 and 4). ECF No 1. The charges stemmed from the November 9, 2010 robbery of a bank in Medford, Oregon (Counts 1 and 2); the December 20, 2010, robbery of a bank in Klamath Falls, Oregon (Counts 3 and 4); and the June 11, 2010, robbery of a bank in Redmond, Oregon (Count 5).

The bank robberies covered by the Oregon indictment were part of a spree of robberies Monical committed in several states during 2010 and 2011. Monical was also federally charged with Bank Robbery in the District of Idaho for the August 27, 2010, robbery of a Wells Fargo Bank, and with three counts of Armed Bank Robbery in the Eastern District of Washington for the September 4, 2010, robbery of a bank in Walla Walla, Washington (Count 1); the October 2, 2010, robbery of a bank in Kennewick, Washington (Count 2); and the December 2, 2010, robbery of a bank in Spokane Valley, Washington (Count 3). *See* Presentence Report ("PSR") ¶¶ 7-10. ECF No. 53.

On March 21, 2012, Monical was interviewed by the FBI while in custody at the Jackson County Jail. PSR ¶ 27. Monical's then-attorney was present for the interview. *Id.* During that interview, Monical confessed to the robberies covered by the federal indictments. PSR ¶¶ 28-36. In addition, Monical confessed to robbing Oregon banks in Ashland, Coos Bay, and Salem. *Id.*[1] At the time of the PSR, Monical had been convicted in Oregon state court of the April 29, 2011, robbery of a bank in Coos Bay, Oregon and the December 16, 2010, robbery of a bank in Ashland, Oregon. PSR ¶¶ 106-07. Monical was also facing state charges related to the bank robberies in Salem, Oregon. PSR ¶ 35.

In his statement to the FBI, Monical told the agents that he had committed a number of the robberies with the assistance of his cousin, Tucker White, with one acting as the "getaway driver" while the other entered the bank. PSR ¶ 31-36. During the bank robbery in Coos Bay, Monical was apprehended by police before he could reach the vehicle were White was waiting for him. PSR ¶ 36. White escaped from police but was later found dead in an apparent suicide. *Id.*

---

[1] Monical also told the FBI agents that he had robbed a bank in Seaside, Oregon, although the PSR writer noted that there was no record of any such robbery and that Monical had been in custody during the period in which he claimed to have committed the robbery.

On November 19, 2012, Monical escaped from the Jackson County Jail. PSR ¶ 108. Monical remained a fugitive until November 2013, when he was apprehended by U.S. Marshals in Oregon City, Oregon. *Id.* After his apprehension, Monical "told authorities he planned his escape from the first day he was at the Jackson County Jail and that planned to escape from any future correctional institution to which he would be moved." *Id.*

At the time of sentencing on his federal charges, Monical had already been sentenced by the Oregon state courts to a total of 35 years for bank robbery and escape in Jackson County and Coos County. PSR ¶¶ 106-08.

Monical was indicted in the District of Oregon while he was a fugitive. After his apprehension, attorney Terry Kolkey was appointed to represent Monical on his federal charges. ECF No. 5. Kolkey negotiated a global resolution to all three of Monical's federal indictments. Under the terms of the agreement, Monical would receive a sentence of 384 months and one day, to be served concurrent to the undischarged term of imprisonment on Monical's state sentences in the Jackson County Circuit Court and the Coos County Circuit Court. PSR. ¶ 130; *see also* Plea Agreement, ECF No. 51.

On June 29, 2015, Monical entered a plea of guilty, pursuant to the plea agreement. ECF No. 49. On November 16, 2015, Monical was sentenced consistent with the plea agreement to 384 months and one day, to be served concurrent to the undischarged term of imprisonment for his state sentences.[2] ECF No. 61.

---

[2] After he was sentenced for his federal charges, Monical was transferred to Marion County to face state charges for robberies committed in Salem, Oregon. In November 2016, Monical is alleged to have attempted to escape from the Marion County Jail, attacking jail deputy in the process. Monical's convictions for the Salem bank robberies and his charges related to the escape attempt and the attack on the Marion County deputy occurred after Monical's sentencing in this case and so are not relevant at to his motion under 28 U.S.C. § 2255.

# LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v.*

*Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

Monical brings this motion under 28 U.S.C. § 2255, alleging (1) that his guilty plea in this case was not knowing or voluntary and (2) that he received ineffective assistance of counsel.[3] Monical now claims that he is innocent of the charges and that he falsely confessed and falsely pleaded guilty.

As a preliminary matter, Monical devotes a considerable amount of time to arguing that he is innocent of the bank robberies in Salem, Oregon. This includes the submission of a Salem police report. Pet. Ex. 9, ECF No. 89-2. Monical was not charged federally for those offenses, however, and this Court has no power to consider the validity of those state convictions under 28 U.S.C. § 2255. In addition, those offenses had not been adjudicated at the time of Monical's sentencing on the federal convictions. Monical's assertions and arguments concerning his eventual conviction for the Salem robberies are not relevant to this motion.[4]

### I. Voluntary Guilty Plea

Entry of a guilty plea must be voluntary, knowing, intelligent, and "done with sufficient awareness of the relevant circumstances and likely consequences." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). In cases involving collateral attack on a guilty plea, the Supreme Court had held that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "The subsequent presentation of conclusory allegations

---

[3] Monical also argues that his motion should be deemed timely, but the Government has expressly waived any objection to timeliness.
[4] Monical is also the plaintiff in several ongoing civil rights cases, some of which relate to the conditions of his confinement at the Jackson County Jail. Monical does not clearly differentiate between the claims involved in those separate actions and those implicated by his motion under 8 U.S.C. § 2255. Monical has, for example, submitted a copy of his civil complaint against the Jackson County Jail. Pet. Ex. 4, ECF 89-2.

unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

In this case, the plea hearing was conducted by Magistrate Judge Mark Clarke. *See* Gov. Ex. 2, ECF No. 74-2 (Transcript of plea hearing). During the hearing, Judge Clark explained that it was his duty "to conduct a proceeding here in open court to make sure that your change of plea is free and voluntary, you understand the nature of the charges, you understand the potential penalties, and to satisfy myself that the facts support your change of plea in all these cases." Gov. Ex. 2, at 4. Monical was placed under oath and Judge Clarke explained that if Monical needed to speak with his attorney at any point, he would stop the proceeding. *Id.* at 5-6. Monical expressed his wish to proceed to sentencing because he had been in solitary confinement for the last twenty months and was "about to lose [his] mind." *Id.* at 6. Judge Clarke replied that he understood and proceeded with the plea colloquy. *Id.*

The Government recited the charges against Monical from the Oregon, Washington, and Idaho cases. *Id.* at 7-11. Monical affirmed that he had had a full and fair opportunity to discuss the charges with his attorney and that he was satisfied with his attorney. *Id.* at 11. Monical also affirmed that he had discussed the plea agreement and plea petition with his attorney and that he had understood them when he signed them. *Id.* Judge Clarke asked Monical if he understood that by pleading guilty he was waiving a number of his rights, including the right to trial, to confront and cross-examine witnesses, and to avoid self-incrimination. *Id.* at 12-13. Monical replied that he understood. *Id.* at 13. Monical also affirmed that he understood that the sentencing judge would not be bound by the parties' agreement. *Id.*

At Judge Clarke's request, the Government recited the maximum sentences for all relevant counts. *Id.* at 13-15. The Government also recited the terms of the plea agreement and the detailed

factual basis for the plea. *Id.* at 17-23. This included a waiver of appeal rights and the understanding that Monical could not withdraw his guilty plea. *Id.* at 22-23. Monical replied that he understood both recitations. *Id.* at 15, 24.

Monical affirmed that he was not under the influence of drugs or alcohol. *Id.* at 6. Monical also affirmed that his plea was not the result of any promises, other than what was in the plea agreement, and that his plea was "not the result of any force, threats or intimidation by anybody." *Id.* at 25-26. Judge Clarke asked if the factual basis of Monical's plea was true and correct as recited by the Government in open court and as detailed in the plea agreement. *Id.* at 26. Monical replied that it was, to the best of his recollection. *Id.*

At the conclusion of the plea colloquy, Judge Clarke found that Monical was "competent to enter his plea in the three cases, that the pleas are free and voluntary, the facts support all of the pleas, and all other requirements of Rule 11 have been met." *Id.* at 26. Judge Clarke accepted Monical's guilty plea and the matter was referred to this Court for sentencing. *Id.* at 27.

Monical argues that he was induced to falsely plead guilty to offenses of which he is actually innocent. Monical claims that he did this in order to secure a transfer from the Jackson County Jail to an Oregon state prison. In essence, Monical argues that he was subjected to cruel and unusual punishment while incarcerated at the Jackson County Jail in order to coerce him into pleading guilty. Monical also claims that he falsely confessed to the crimes in order to write a book about his experiences and to protect his cousin White's son, who Monical now claims was the actual bank robber.

As previously discussed, Monical escaped from the Jackson County Jail in November 2012 and remained at large for nearly a year. After his apprehension in 2013, Monical was subject to more restrictive conditions of confinement. Monical has submitted portions of the administrative

segregation log for a few days of his incarceration at the Jackson County Jail. Pet. Ex. 5, 6. ECF No. 89-2; Monical Decl. Ex. 2, ECF No. 120; Monical Decl. Exs. A-F, ECF No. 121-1. To the extent these exhibits are relevant to Monical's claims, they do not support his assertions. Monical generally claims that he was continuously confined in a darkened cell with no access to exercise or other necessities and that he was not allowed to have contact with anyone. The logs show that he was regularly removed from his cell; that he received visitors, including his state and federal attorneys; and that he refused to participate in indoor recreation. Monical has also submitted his inmate visitation log, which similarly shows numerous professional and personal visits and telephone calls throughout the period of his incarceration at Jackson County Jail. Monical Decl. Ex. 1, ECF No. 120.

Monical also claims that he was denied medical treatment for a dental condition, as part of an effort to coerce him into pleading guilty. Monical has submitted a potion of his medical records from his incarceration. Monical Decl. Ex. 4. ECF No. 120. The records show that Monical did have an issue with one of his teeth and on July 24, 2014, he requested and received over-the-counter pain medication. Monical Decl. Ex. 4, at 2. Monical was seen by a dentist on August 5, 2014, during which time he "decided against extraction," and "refuse[d] treatment." Monical Decl. Ex. 4, at 1. Once again, the record contradicts Monical's assertions.

As to Monical's claim that he was psychologically unfit to enter a plea, a habeas petition is entitled to an evidentiary hearing on the issue of his competency to stand trial "if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." *Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003) (internal quotation marks and citation omitted). "A 'good faith' or 'substantial doubt' exists when there is substantial evidence of incompetence." *Id.*

In this case, Monical's claims concerning his mental capacity are contradicted by the Declaration of his attorney, discussed in greater detail below. The Court also permitted Monical to pursue limited discovery concerning his medical records. Although, as noted, Monical has submitted his dental records, he has tellingly failed to submit any mental health records.

Considering the detailed plea colloquy and the contradictory record evidence, the Court concludes that Monical's allegations concerning the voluntariness of his plea are wholly incredible. Monical has failed to provide substantial evidence of incompetence and so no evidentiary hearing is required. The Court concludes that Monical's plea was knowing, intelligent, and voluntary.

## II. Ineffective Assistance of Counsel

Monical claims that his attorney, Terry Kolkey, was ineffective for (1) failing to seek a mental competency hearing; (2) failing to properly investigate the claims against Monical and "offer options,"; (3) failing to seek suppression of Monical's confession to the FBI; (4) failing to offer evidence of actual innocence; (5) failing to challenge the conditions of Monical's confinement; (6) pressuring Monical to plead guilty; (7) failing to fully explore plea possibilities; (8) failing to explain the implications of a guilty plea; and (9) failing to assert Monical's speedy trial rights.[5]

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013).

---

[5] Many of the individual bases for alleged ineffective assistance of counsel contained the Amended Motion are duplicative and have been consolidated in this summary.

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

In response to Monical's Motion, the Government submitted a Declaration from Kolkey. ECF No. 74-1. In his Declaration, Kolkey affirms that he discussed the benefits of a global resolution of Monical's federal charges with Monical on several occasions. Kolkey explained that, by accepting a global resolution to the federal charges, Monical would avoid the prospect of spending further time in county jails in Washington and Idaho awaiting resolution of those charges. Kolkey also explained that, through a global resolution, Monical would receive a federal sentence which would run concurrent to the state sentences and that the federal sentence would be less than the time he was already sentenced to serve on the state convictions. Monical expressed his understanding and "repeatedly told [Kolkey] that he wanted to resolve all of his pending cases and that was willing to wait while [Kolkey] attempted to have his other cases transferred to the district court in Medord." Kolkey Decl. Although the Government initially intended to seek a sentence of 40 years for a global resolution, Kolkey was able to negotiate for a sentence of 32 years.

Kolkey denies that he pressured Monical into accepting the plea agreement and states that he told Monical that he could accept the plea or go to trial. Monical told Kolkey that he did not want to proceed to trial on the charges. Although Monical now complains that Kolkey should have sought to sever the charges, Kolkey affirms that there were no grounds for severance. Furthermore, severance would have been contrary to the agreed-upon strategy of seeking a global resolution.

The terms of Monical's plea, including its effect on the right to appeal or to seek collateral relief, are spelled out in the plea letter. Kolkey went over the letter with Monical and was satisfied that Monical understood and agreed to those terms. As discussed in the preceding section, the consequences of the plea agreement were also explained to Monical during the plea hearing by Judge Clarke and the Government. Monical affirmed on the record that he understood the consequences of his plea.

With respect to the conditions of Monical's confinement, Kolkey sought and received Monical's complete record from the Jackson County Jail. Kolkey contacted the Medford City Attorney's office and sought to improve the conditions of Monical's incarceration. Kolkey affirms that he was unable to do so because of Monical's prior escape and his conduct while in custody.

### A. Mental Competency Hearing

Monical alleges that he was mentally incapacitated at the time of his plea and that Kolkey was ineffective for failing to seek a mental competency hearing. As discussed in the preceding section, Judge Clarke found Monical to be competent to enter a plea at the time of his plea heating. In his Declaration, Kolkey says that, although Monical "experienced stress" from his long confinement in the Jackson County Jail and wished to begin serving his prison sentence, "he never exhibited a lack of coherence or lucidity about what he was doing." Kolkey specifically affirms that Monical was mentally coherent and lucid at the time of his plea. During their conversations, Monical "expressed a complete understanding of the charges and consequences of what he was doing." Kolkey found that Monical had an "excellent" memory and he recounted each of the federally-charged robberies "in vivid details." Based on his experience with Monical, Kolkey found he had "no reason to doubt Mr. Monical's mental capacity." Kolkey Decl.

The Court granted limited discovery to permit Monical to receive his medical records. ECF No. 104. These records were produced by the Government and delivered to Monical. ECF No. 106.[6] Although Monical continues to assert that he was psychologically unfit to enter a plea, he has tellingly failed to produce any medical records to support such an assertion.

---

[6] The Government also produced additional Jackson County Jail records at Monical's request. ECF No. 118. Monical acknowledges that he received the discovery materials. Monical Decl. 9, ECF No. 120.

On this record, the Court cannot find that Kolkey was ineffective for failing to seek a mental competency hearing. Nor is there any evidence to suggest that, had such a hearing been sought, Monical would been found incompetent.

### B. Suppression of Monical's Prior Confession

On March 21, 2012, one of the attorneys who represented Monical for the purposes of his state charges arranged for an interview between Monical and federal law enforcement. Kolkey Decl.; PSR ⁋ 27. During that interview, Monical confessed to the bank robberies covered by the federal indictments. Although the purpose of the interview was to seek a settlement of Monical's federal charges, the Government did not make an acceptable offer and Monical did not benefit from his confession. Kolkey Decl. Monical subsequently escaped from state custody and was federally indicted while a fugitive. ECF No. 1. After Monical was apprehended, Kolkey was appointed to represent Monical on the federal charges. Although Kolkey believed that Monical's prior state counsel "did not act prudently," he investigated the issue was unable to find any meritorious basis for the suppression of Monical's confession. Kolkey Decl. In the absence of a valid basis for suppression, Kolkey successfully used Monical's "gratuitous confession" as a "selling point" to convince the Government to accept a concurrent sentence. *Id.*

In his motion, Monical does not suggest any valid basis for the suppression of his confession, other than his own dissatisfaction with the result. Nor is the Court able to discern any valid basis for suppression. The Court cannot find that counsel rendered ineffective assistance based on a failure to advance meritless arguments. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (so holding).

### C. Failure to Investigate

A number of Monical's claims for ineffective assistance concern Kolkey's alleged failure to investigate the charges, to present exculpatory evidence, or to "offer options." Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." *Strickland*, 466 U.S. at 691. In making this inquiry, the Supreme Court has cautioned that courts must apply "a heavy measure of deference to counsel's judgments." *Id.*

In his Declaration, Kolkey affirms that, although Monical maintained his innocence with respect to one of his state convictions, he never suggested that he was innocent of any of the federally-charged bank robberies. Furthermore, Monical recounted his involvement in the robberies to Kolkey in "precise and vivid" detail during their conversions. Kolkey was not presented with any reason to suppose Monical was not, as he claimed at the time, guilty of the federal charges. Kolkey believed that he had received complete discovery from the Government as to all the federal charges and he went over that material with Monical. Kolkey was satisfied upon review of the evidence that the Government would be able to obtain a conviction on all the federal charges. "Since Mr. Monical admitted to being involved in all of the robberies, there was no need to find alibi witnesses or other defense witnesses." Kolkey Decl.

Finally, Monical asserts that Kolkey met with him only three times. In his Declaration, Kolkey says that his records indicate that he met with Monical eleven times and that they exchanged a number of telephone calls. Monical's inmate visitation log confirms generally confirms Kolkey's recollection. Monical Decl. Ex. 1, ECF No. 120. The log shows that they had nine in-person visits and eight telephone calls between June 11, 2014, and September 22, 2015.

On this record, the Court cannot conclude that Kolkey was ineffective for failing to investigate the charges against Monical, nor can the Court conclude that he was ineffective for failing to present exculpatory evidence.

### D. Plea Negotiations

Several of Monical's claims for ineffective assistance relate to the negotiation of the plea agreement. As previously discussed, Kolkey negotiated a complex, multi-district global resolution to Monical's federal charges. Despite the strategic disadvantage occasioned by his gratuitous confession, the result of these negotiations was substantially favorable to Monical. Monical received a sentence of 384 months and one day, well below the 40-year sentence initially sought by the Government. Furthermore, Kolkey secured the Government's agreement that the sentence would run concurrent to the undischarged terms of Monical's state convictions in Jackson and Coos Counties, with the result that Monical would not serve any additional time for his federal convictions. As the Government points out in its response, sentences for convictions under 18 U.S.C. § 924(c) are not permitted to run concurrently to any sentence, including state sentences. 18 U.S.C. § 924(c)(1)(D)(ii); *United States v. Gonzales*, 520 U.S. 1, 11 (1997). Had the Government not agreed to a concurrent sentence in the plea negotiations, Monical would have faced the certainty of a sentence running at least partially consecutive to his state sentences. Kolkey affirms that he explained these issues and that Monical agreed to the negotiation strategy and to the subsequent agreement. Kolkey Decl. On this record, the Court cannot conclude that Kolkey was at all ineffective with respect to the negotiation of the plea agreement. On the contrary, it appears that he secured a highly favorable result.

Monical also asserts that Kolkey was ineffective for failing to seek severance of Monical's charges and for failing to asset Monical's speedy trial rights. Kolkey explains in his Declaration

that there were no grounds for severance and that, even if there had been, severance was contrary to their strategy of seeking global resolution. Kolkey affirms that he explained the benefits of global resolution to Monical. Monical understood that, if the federal cases were not resolved together, Monical faced the prospect of successive prosecutions in all three districts. In such a circumstance, Kolkey explains, Monical would have waited, potentially for a protracted period, in the local jails of Oregon, Idaho and Eastern Washington while his cases were litigated individually. Monical wished to avoid that outcome and so he agreed to and endorsed Kolkey's pursuit of a global resolution. Kolkey Decl. With respect to the speedy trial issue, Kolkey explains that arranging for the transfer of the Idaho and Washington cases to Oregon took some time, but that Monical understood the benefits to be gained by global resolution and agreed to the necessary continuances. Kolkey Decl.

To the extent that Monical claims Kolkey failed to explain the implications of a guilty plea with respect to the filing of a direct appeal or a collateral challenge to the conviction, the record is similarly clear. As noted, Kolkey affirms that he explained the consequences of the guilty plea to Monical several times while reviewing the plea agreement. The plea letter itself explains the appeal and habeas waivers in detail. Furthermore, the scope of the waivers was explained to Monical on the record at the time of his change of plea and he affirmed on the record that he understood and agreed.

Finally, Monical contends that Kolkey pressured him into pleading guilty, either from bias against Monical or an unwillingness to proceed to trial. In his Declaration, Kolkey denies any bias or personal dislike of Monical and denies that he pressured Monical to take the plea agreement. Kolkey states that he explained trial was an alternative. Kolkey affirms that Monical did not wish to proceed to trial and that he fully endorsed Kolkey's plea negotiation strategy. At the plea

hearing, Monical agreed that he had not been induced to plead guilty by any threats or coercion, nor had he been promised anything other than the sentence recommendation laid out in the plea agreement. Judge Clarke explained that Monical had a right to go to trial and that, by accepting the plea, he was waiving that right. Monical affirmed on the record that he understood and wished to enter a guilty plea.

On this record, the Court cannot conclude that Kolkey was ineffective in negotiating the global resolution plea agreement or in explaining the consequences of Monical's guilty plea.

### III. Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted).

In this case, the Court concludes that Monical has failed to make the required showing and so declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons set forth above, Defendant's Amended Motion under 28 U.S.C. § 2255, ECF No. 89, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. Accordingly, Defendant's Motion for Appointment of Counsel, ECF No. 102, is also DENIED. The Court declines to issue a certificate of appealability on the basis that Defendant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). Any other pending motions are DENIED as moot.

It is so ORDERED and DATED this 4th day of March, 2019.

s/Michael J. McShane
MICHAEL McSHANE
United States District Judge